IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-02875-ZLW

WILLIAM PAGAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____

ORDER
_____

    Plaintiff appeals the March 24, 2009, written decision of Administrative Law Judge William Musseman (ALJ) denying his claim for Social Security Supplemental Security Income Benefits (SSI) and Disability Insurance Benefits (DIB).  The Appeals Council denied review (R. 1-3), and this appeal was timely filed.

    This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The Court has determined that the appeal can be resolved on the parties' briefing and that no oral argument is necessary.

**BACKGROUND**

    **A.**    **Personal History, Alleged Disability, and Filing of Claims**

    Plaintiff was born on June 5, 1967, and lives in Pueblo, Colorado.  (R. 88, 100). Plaintiff has two daughters, and stated in 2007 that he lives with his adult daughter and his girlfriend.  (R. 185, 189).  However, he stated in 2008 that he has not seen either of

his daughters in 12 years. (R. 271). Plaintiff has stated that he completed the twelfth grade, but has also stated that he earned a GED. (R. 99, 185). The Record indicates that Plaintiff was arrested as a juvenile for offenses including theft, and was arrested numerous times as an adult for offenses including murder, assault, and robbery. (R. 186). Plaintiff was released from an eight-year term of incarceration in 2006. (R. 21, 186). Plaintiff has a long history of drug and alcohol abuse but stated in 2007 that he no longer uses drugs or alcohol. (R. 186).

Plaintiff filed applications for SSI and DIB benefits on March 21, 2007, alleging that he became disabled on March 1, 2000. (R. 71-77). Plaintiff's Social Security Administration (SSA) Disability Report states that Plaintiff claims that his ability to work is limited due to "[b]i polar, obsessive compulsive disorder, chronic depression, anxiety disorder, migraine headaches, arthritis in ribs, nerve pain throughout body." (R. 94). Plaintiff's claim was denied, and he requested a hearing before an ALJ, which was held on December 17, 2008. (R. 32-39, 43-43, 18-31). The ALJ issued a written decision on March 24, 2009, finding Plaintiff not disabled. (R. 4-17). The Appeals Council denied Plaintiff's request for review, and Plaintiff timely requested judicial review. (R. 1-3).

### B.    Work History

Plaintiff has worked in the past as a laborer for construction companies, a machine operator in a warehouse, a call center service representative, and retail store stocker. (R. 95). In March 2007, Plaintiff stated that he had last worked in 2000; however, he stated at the December 2008 administrative hearing that after his release

from prison in 2006 he worked for a concrete company for two months. (R. 21-23, 95).

### C.      Medical History

The Court has reviewed carefully the entire record in this case, and will address Plaintiff's medical records as they are pertinent to the parties' arguments in part D of the Analysis section, set forth below.

### D.      The Administrative Hearing

The administrative hearing was held on December 17, 2008. April 26, 2007. (R. 18-31). Plaintiff was represented by attorney. Plaintiff and Vocational Expert Martin Rauwer (VE) testified at the hearing.

Plaintiff testified that he was fired from his most recent job in 2006 because of his behavior. (R. 23). He stated that he has trouble dealing with people, and has trouble following directions and instructions. (R. 23). On a typical hay, Plaintiff sleeps a lot, and doesn't leave the house much. (R. 23). He thinks people are looking at him or whispering about him. (R. 24). He doesn't like to be around people and tries to avoid them. (R. 24). He is tired all the time and doesn't care about things. (R. 25). Plaintiff testified that he takes pills for his psychological problems but he hasn't noticed that they've helped. (R. 26). Plaintiff sees a therapist, Tom Clemens, every two weeks. (R. 27).

The ALJ presented the VE with the following hypothetical: an individual of the same age and with the same educational background as Plaintiff, with no exertional limitations, but with the following non-exertional limitations: no dealing with the general

public, minimal supervision, and no complex tasks. (R. 29). The VE testified that such a person could perform work as a floor wax technician, bottling line attendant, and small product assembler. (R. 30).

**ANALYSIS**

    **A.    Determination of Disability**

An individual

> shall be determined to be under a disability only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[1]

Whether a person has a "disability" supporting entitlement to Social Security benefits is determined using a five-step sequential evaluation process, which considers whether the claimant:

    (1) worked during the alleged period of disability;
    (2) has a severe impairment;
    (3) has a condition which meets or equals the severity of a listed impairment;
    (4) can return to his or her past relevant work; and
    (5) if not, whether he or she can perform other work in the national economy.[2]

If a determination can be made at any step, it is not necessary to proceed to the next step of the analysis.[3]

---

[1] 42 U.S.C. § 423(d)(2)(A).

[2] 20 C.F.R. § 404.1520(a)(4) (2008); see also Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n.2. If claimant is successful, the burden of proof falls on the Commissioner to establish the requirements of step five. Id. at 751.

[3] 20 C.F.R. § 404.1520(a)(4).

A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities."[4] Basic work activities means "the abilities and aptitudes necessary to do most jobs."[5] This includes:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.[6]

### B.  The ALJ's Decision

The ALJ's written decision applied the five-step sequential analysis. At step one, the ALJ determined Plaintiff has not engaged in substantial gainful Since march 1, 2000. (R. 9).

At step two, the ALJ determined that Plaintiff has the following severe impairments: anti-social personality and post traumatic stress disorder.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. (R. 9).

---

[4] 20 C.F.R. § 404.1520(c).

[5] 20 C.F.R. § 404.1521(b).

[6] Id.

Before proceeding to step four, the ALJ was required to determine Plaintiff's "residual functional capacity" (RFC), which is his ability to perform work on a regular and continuing basis despite his impairments.[7] The ALJ found that Plaintiff has a residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: no dealing with the general public, minimal supervision, and no complex tasks. (R. 9).

At step four, the ALJ determined that Plaintiff is not able to perform any of his past relevant work. (R. 15).

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 16).

Therefore, the ALJ found that Plaintiff is not disabled under the Social Security Act.

### C.   Standard of Review

When a district court reviews the Commissioner's decision to deny Social Security benefits, the Court's only job is to determine whether the Commissioner's factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.[8] Substantial evidence is such

---

[7] A claimant's RFC is his or her ability to perform work on a regular and continuing basis despite his or her impairments. 20 C.F.R. 404.1545. The ALJ must determine the claimant's RFC before proceeding to step four. 20 C.F.R. § 404.1520(a)(4).

[8] Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[9]  Since review is based on the record as a whole, the entire record must be examined to determine whether the evidence supporting the decision is substantial, taking "into account whatever in the record fairly detracts from its weight."[10]  However, the Court may neither reweigh the evidence nor substitute its discretion for that of the ALJ.[11]

### D. Plaintiff's Arguments

#### 1. Dr. Nizami

The Record contains medical records from Musharraf Nizami, M.D., Plaintiff's treating psychiatrist, dating from September 8, 2008, through February 4, 2009.[12]  (R. 274-281).  Plaintiff contends that the ALJ did not have a proper basis for rejecting Dr. Nizami's opinions concerning Plaintiff's RFC.

Dr. Nizami's notes dated September 8, 2008, state that Plaintiff reported that he feels paranoid and anxious.  Plaintiff stated that he has extreme mood fluctuations and gets angry easily.  At times he wants to confront people.  Dr. Nizami diagnosed Plaintiff with antisocial personality disorder and assigned him a GAF score of 65.  This score falls within the middle of the GAF range, indicating "[s]ome mild symptoms (e.g.,

---

[9]Id.

[10]Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).

[11]White v. Massanari, 271 F.3d 1256, 1257 (10th Cir. 2001).

[12]The date on the notes at R. 276 is obscured on the Court's copy of the Record; as best the Court can tell the date appears to be February 4, 2009.

depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."[13]  Dr. Nizami increased Plaintiff's Depakote prescription and also prescribed Ablify.  (R. 277-279).

On October 22, 2008, Dr. Nizami stated that Plaintiff "still continues to have problems [with] moods and anxiety."  (R. 275).  He stated that Plaintiff was cooperative and that his speech was normal.  He stated that Plaintiff was anxious, irritable, and had mood swings.  He further stated that his insight and judgment were questionable.  However, he was sensorially clear and oriented to time, place, and person.  Dr. Nizami He wrote, "need to work [with] Tom Clemens [Plaintiff's therapist] on anger management."  (R. 275).

In his notes dated February 4, 2009, Dr. Nizami states that Plaintiff was cooperative, with adequate insight and normal speech but with rapid thinking and a depressed and irritable affect.  His memory was intact.  (R. 276).

The Record contains a Residual Functional Capacity Evaluation (Mental) form signed by Dr. Nizami and Tom Clemens, LCSW in November 2008.  The form states that Plaintiff has marked or extreme limitations in every subcategory of mental functioning listed under understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (R. 280-281).  The ALJ stated that "[n]o

---

[13]DSM-IV at 34.

weight has been given to this evaluation that is unsupported by and contradicted by Dr. Nizami's own records and assessments." (R. 13).

A treating physician's opinion should be given controlling weight "if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record."[14]  If the ALJ determines, under that analysis, that the opinion is not entitled to controlling weight, then he or she must proceed to weigh the opinion using the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927, namely,

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[15]

However, not every factor applies in every case, and the ALJ need not explicitly discuss each factor, as long as he provides good reasons for the weight that he ultimately affords the treating physician's opinion.[16]  If the ALJ rejects the treating physician's opinion, he must give specific, legitimate reasons for doing so.[17]  "A treating physician's

---

[14] Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995) (citation omitted).

[15] Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (internal quotation and citation omitted).

[16] Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

[17] Hamlin, 350 F.3d at 1301.

opinion may be rejected if his conclusions are not supported by specific findings," and may be rejected where "the physician's own office records [do] not support his later expressed opinion [concerning disability]."[18]

Here, the ALJ did provide specific, legitimate, reasons for rejecting Dr. Nizami's opinion concerning Plaintiff's RFC.  He summarized Dr. Nizami's actual examination notes from September and October 2008, including his assignment of a GAF score of 65.  He noted that Dr. Nizami's opinions and findings contradict and do not support his later RFC findings.  He did not err in rejecting the RFC findings on that basis.

### 2.     Tom Clemens, LCSW

The Record contains records from Licensed Clinical Social Worker Tom Clemens from April 18, 2008, through September 11, 2008.  (R. 262-270).  Mr. Clemens co-signed the mental RFC form with Dr. Nizami in November 2008.  Plaintiff contends that the ALJ erred by failing to weigh Mr. Clemens' concurrence with Dr. Nizami's opinions on the RFC form, since his concurrence gives more weight to the conclusions stated on the form.  Although Mr. Clemens is not a physician and thus not an "acceptable medical source" whose opinion may be entitled to controlling weight under the applicable regulations, the ALJ nonetheless was required to consider those opinions that and explain the weight given to them."[19]

---

[18] Castellano v. Secretary of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994).

[19] Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007).

Here, the ALJ did not discuss or mention Mr. Clemens' records at all in his written decision.  Defendant argues that the ALJ was not required to consider Mr. Clemens' treatment notes because the notes "simply do not support their [Mr. Clemens' and Dr. Nizami's] joint opinion that Plaintiff had marked or extreme limitations in all areas of mental functioning.  Although Mr. Clemens' treatment notes may evidence some limitations in areas of social functioning, the ALJ addressed these limitations by limiting Plaintiff to jobs involving contact with the public and limited supervision."[20] However, Defendant's opinion that Mr. Clemens' records do not support his RFC opinion cannot substitute for an analysis and conclusion on that issue by the ALJ, and the ALJ's written opinion does not provide any link between Mr. Clemens' treatment notes and the hypotheticals he presented to the VE at the administrative hearing.  **The matter will be remanded for consideration and evaluation of Mr. Clemens' treatment notes.**

### 3.  Cynthia Jimenez, LCSW

The Record contains medical records from Cynthia Jimenez, LCSW, dated February 28, 2008.  (R. 271-273).  Plaintiff contends that that ALJ did not have a proper basis for rejecting Ms. Jimenez's opinion that Plaintiff has a GAF score of 50.[21]  The ALJ stated in his written opinion that "Ms. Jemenez's [sic] records can not be accorded any

---

[20]Doc. No. 16 at 16 n. 8.

[21]A GAF core between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation ...) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

significant weight due to the inconsistent and contradictory statements made to her by the claimant." (R. 13). Specifically, the ALJ noted that while Plaintiff stated that he missed his mother, who lives in Puerto Rico very much, he had previously stated (elsewhere in the record) that he hated his parents. The ALJ noted that although Plaintiff told Ms. Jimenez that he had not been in contact with his children for 12 years, the claimant's adult daughter was in fact living with him. The ALJ also noted that Plaintiff told Ms. Jimenez that he was born in Puerto Rico, but (elsewhere in the record) he stated that he was born in Boston. Last, the ALJ noted that Plaintiff told Ms. Jimenez that medications have never helped his mental problems, but he admitted to other physicians that medications had helped but he had stopped taking them (R. 12-13).

Plaintiff is correct that Ms. Jimenez assigned the GAF score of 50 despite her suspicion "that [Plaintiff] is being rather deceitful in many of his comments and information today." (R. 273). Plaintiff argues that there is nothing to indicate that Plaintiff's untruthful statements caused Ms. Jimenez to issue and inaccurate opinion. The Court disagrees. Specifically, Plaintiff's untruthful statement that medications have never helped his mental problems absolutely bears upon Ms. Jimenez's opinion concerning Plaintiff's condition and abilities. The ALJ did not err in declining to give Ms. Jimenez's opinion significant weight.

### 4. Donald G. Glasco, M.D.

The Record contains records from state agency reviewing physician Donald G. Glasco, M.D. dated June 25, 2007, and August 1, 2007. (R. 190-208). His records

consisted of a completed Mental Residual Functional Capacity Assessment form and a Completed Psychiatric Review Technique form. Plaintiff contends that the ALJ erred in relying on Dr. Glasco's narrative statement appearing at section II of the Mental Residual Functional Capacity Assessment form, in which Dr. Glasco wrote that Plaintiff is able to perform some work with specified restrictions, without considering the "check-the-box" portion of the form appearing at section I, in which Dr. Glasco indicated that Plaintiff is moderately limited in some of the listed categories, such as the ability to understand and remember detailed instructions and the ability to maintain attention and concentration for extended periods. As stated on the form itself, the information stated by the physician in section III serves to "explain" and "clarif[y]" the preceding check-the-box summary in Section I. As in <u>Johansen v. Barnhart</u>,[22] Dr. Glasco translated the observations on the summary worksheet into his ultimate conclusion in section III. The ALJ did not err in relying on that ultimate conclusion.

### 5.     Steven Martin, M.D. and Carlos Rodriguez, Ph.D.

The Record contains a Colorado Department of Human Services "Med-9" form signed by Steve Martin, M.D. and Carlos Rodriguez, Ph.D. on February 16, 2008. Plaintiff's diagnosis as stated on the form is "Major Depression/Psychotic Thought Disorder/Intermittent Explosive Disorder/Polysubstance abuse (in remission per pt.)."

---

[22]314 F.3d 283, 289 (7th Cir. 2002).

(R. 246). Drs. Martin and Rodriguez stated on the form that Plaintiff is disabled and will remain so for 12 months or longer. (R. 246). The ALJ stated that he gave no weight to the form because it is not supported by any objective findings, examination results, or office notes, because no specific limitations were given, and because the form was not filled out by a medical source. In fact, Drs. Martinez and Rodriguez are both medical sources. However, the ALJ was correct that the Med-9 form is unsupported and states no specific limitations. Citing to Williams v. Bowen,[23] Plaintiff argues that even an unsupported, conclusory opinion must be considered by the ALJ. Williams does not state such a rule. Rather, in Williams, although the defendant argued that the plaintiff's treating physician's opinions were unsupported and conclusory, the court concluded that this argument was unfounded since the opinions were well-supported and essentially uncontradicted by all of the other evidence in the record.[24] Such is not the case here. The ALJ did not err in giving no weight to the Med-9 form.

### 6. Plaintiff's Credibility

Credibility determinations by the ALJ are generally binding upon review.[25] The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms "are not credible to the extent that they are not

---

[23] 844 F.2d 748, 758 (10th Cir. 1988).

[24] See id.

[25] Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

supported by the evidence of record." (R. 14). Indeed there is substantial evidence in the record, discussed by the ALJ, which undermines Plaintiff's statements concerning his symptoms, specifically, evidence that Plaintiff repeatedly stated that his medication helped him, but he nonetheless repeatedly stopped taking it, and then reported that his symptoms were worse. (R. 11-12, 14). Plaintiff cites no authority for his argument that the ALJ erred in considering evidence of Plaintiff's untruthful statements on topics which do not directly pertain to Plaintiff's alleged disability. To the contrary, evidence that Plaintiff has not told the truth - on any topic - bears on the credibility of his statements concerning his subjective symptoms. The ALJ's credibility determination is supported by substantial evidence in the record.

Accordingly, it is

ORDERED that the March 24, 2009, written decision of Administrative Law Judge William Musseman is reversed. It is

FURTHER ORDERED that this case is remanded to the Administrative Law Judge for reconsideration under Sentence Four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), consistent with the Court's findings and conclusions. It is

FURTHER ORDERED that on remand the ALJ is instructed to provide the necessary consideration and evaluation as explained above.

DATED at Denver, Colorado, this 22nd day of March, 2011.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court